UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
SHAWN L. GARNER,                  )
         Petitioner               )
                                  )
         v.                       )  CIVIL ACTION NO. 04-12626-PBS
                                  )
UNITED STATES OF AMERICA,         )
         Respondent.              )
                                  )
```

**MEMORANDUM AND ORDER**

February 14, 2006

Saris, U.S.D.J.

## I. INTRODUCTION

Shawn Garner, acting *pro se*, has filed a habeas petition asserting that his counsel was constitutionally ineffective when he failed to impeach a police officer with prior inconsistent statements; that the prosecution improperly failed to disclose the identity of the informant named in the search warrant; and that his sentencing enhancements were unconstitutional under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). He also moves for an evidentiary hearing. The petition is **DENIED**. The request for a hearing is **DENIED**.

## II. BACKGROUND

On December 18, 2001, petitioner was convicted after a jury trial of (1) possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), (2) possession of cocaine with the

intent to distribute in violation of 21 U.S.C. § 841(a)(1), and (3) unlawfully possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). On April 3, 2002, this Court sentenced petitioner to 270 months of incarceration.  Petitioner appealed, and the First Circuit affirmed his conviction and sentence on August 27, 2003.  United States v. Garner, 338 F.3d 78, 79 (1st Cir. 2003).  I assume familiarity with that opinion.  The Supreme Court then denied certiorari on December 8, 2003.  Garner v. United States, 540 U.S. 1084 (2003).  The habeas petition was filed on December 13, 2004.

## II.  STANDARD

### A. Ineffective Assistance of Counsel

Garner argues that his attorney's failure to impeach Detective Linskey with prior inconsistent statements during cross-examination was constitutionally ineffective.  The standard for evaluating a claim of ineffective assistance of counsel has long been established:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both

>showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. As all the Federal Courts of Appeals have now held, the proper standard for attorney performance is that of reasonably effective assistance.

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984) (citations omitted). Petitioner bears the burden of proving that but for counsel's failures, the outcome would likely have been different. Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005).

Cross-examination is a matter of trial strategy. See Stephens v. Hall, 294 F.3d 210, 226-27 (1st Cir. 2002) (finding failure to impeach key witness with prior criminal record was not ineffective). Ineffective cross-examination is only found in extreme cases. See, e.g., Gonzalez-Soberal v. United States, 244 F.3d 273, 276, 279 (1st Cir. 2001) (failure to impeach key witness with a psychological report indicating that he can't help lying and a personal letter indicating that he would not tell the whole truth was ineffective assistance). "[W]ide latitude" should be given to counsel in determining how to represent a client. Yarborough v. Gentry, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003) (finding representation was not deficient because counsel should be given discretion regarding what to include in closing arguments).

Petitioner asserts that Detective Linskey made inconsistent statements related to the pagination on an inventory list. After

the search of Garner's residence, the articles found, and the location where they were found, were listed on an inventory list. Initially the inventory list provided to the first defense counsel was only two pages long. The second defense attorney later obtained an inventory list with three pages. The third page ended up including a critical piece of evidence against Garner because Linskey testified he found Garner's bail receipts in the same cigar box with both the cocaine and the guns, thus connecting him to the contraband found in the box in the common laundry room in the basement. The third page of the inventory sheet supported that contention. Defense counsel filed a motion to dismiss for alleged police misconduct, alleging that Detective Linskey had taken the bail receipts from the upstairs apartment and planted them in the cigar box. The Court denied this motion after an evidentiary hearing on July 3, 2000.

The theory of the defense at trial was that Linskey had placed the bail receipts with the guns and drugs found in the basement. Thus, flagging the inconsistencies in the two inventory packets (one with two pages, and the other with three), became an important way to undermine Linskey's credibility.

During the pre-trial hearing, defense counsel questioned Linskey with regard to the inconsistent use of page numbers on the inventory forms. The relevant transcript from the pretrial evidentiary hearing states:

Q. Can you tell us why that last form, the original Exhibit 1, was generated all at the same time, why the other two packages have different numbering?

MR. LA PLANTE: Objection. It calls for speculation. I did the numbering, your Honor.

THE COURT: If you know.

A. I don't know.

Q. Who did the numbering, do you know? Not the Bates stamp numbering. I'm saying – I'm talking about the numbering in the upper right-hand corner?

A. Yes, sir. It looks like it was initially done and then might have been handwritten over, as if a mistake had been made.

THE COURT: But you don't know?

THE WITNESS: I do not know, your Honor. (Opp'n to Habeas Pet. 9-10.)

At trial, Linskey contended the handwriting on the re-pagination was his. The relevant parts of the trial transcript state:

A. It appears I renumbered the pages, 1 of 1, 2 of 1–

MR. GIOIA: Strike that word "appears."

THE COURT: Well, do you remember?

Q. Do you remember what you did?

A. I don't remember doing it. But I can tell that's my handwriting in the corner.

THE COURT: Well, no. I'll allow that it's his handwriting.

Q. Judging from the handwriting, can you tell what you did?

A. Changed the numbers Page 1 of 2, 2 of 2, and 3 of 3.

Q. Okay. So that's a three-page document there?

A. Yes, sir.

> Q. And before you made the changes, what did the typewritten page numbers say?
>
> A. 1 of 2, 1 of 2, and 1 of 2.
>
> Q. So, all three pages said page 1 of 2?
>
> A. Correct.
>
> Q. And you made a correction with your handwriting?
>
> A. Yes, sir.
>
> Q. Tell the jury what correction you made.
>
> A. I put 1 of 3, 2 of 3, and 3 of 3, in the top right-hand corner.

(12/11/01 Trial Tr. 2:118-19).

The inconsistency in the genesis of the re-pagination was a relatively minor one. Initially, Detective Linskey said that he did not know who did the numbering, but at trial he testified that he made the correction because he recognized the handwriting as his own but he did not remember making the change. Assuming that even if counsel should have impeached Linskey on the inconsistency, there is no reasonable probability it would have made a difference in the outcome of the trial because counsel amply explored the discrepancies in the pagination of the various inventory forms. Moreover, Sgt. Linskey was impeached with other inconsistent statements.

B. **Disclosing Evidence Favorable to the Defendant**

Garner contends that the prosecution failed to disclose to him that the mother of his child was the informant who provided

information to the police used in the search warrant. She was a defense witness at trial. According to Garner, she had reported to police only that her son had found two guns while visiting his father, but had never told Linskey that petitioner was selling drugs from the apartment. Therefore, Garner contends that Sgt. Linskey fabricated the information in his search warrant stating that he received information from a confidential informant, "Dread" that the petitioner was selling drugs out of his apartment, and that his associates had seen Garner's son with two firearms outside. However, Linskey submitted an affidavit that the mother was not the confidential informant referred to in the search warrant, and that she did not provide Linskey with any information used to obtain the search warrant. Garner has not introduced any admissible evidence to contradict Linskey on this point. Accordingly, no evidentiary hearing is necessary. <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993).

Garner has not demonstrated why disclosing the identity of the real informant concerning the drugs was "necessary to mounting an adequate defense." <u>United States v. Robinson</u>, 144 F.3d 104, 106 (1st Cir. 1998).

## C. <u>Constitutionality of Sentencing</u>

Garner argues that his sentence was unconstitutional under <u>Blakely v. Washington</u>, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004) and <u>Booker</u>, 543 U.S. 220. This objection was not raised at trial or on direct appeal. Garner was sentenced in 2002. The

First Circuit has held that Booker and Blakely do not apply retroactively. As such, Booker/Blakely is not retroactive to cases on collateral review. See Schriro v. Summerlin, 542 U.S. 348, 358, 124 S. Ct. 2519, 2526 (2004); Cirilo-Munoz, 404 F.3d at 533.

### V. CONCLUSION

The petition is **DENIED**.

S/PATTI B. SARIS
United States District Judge